**Ex parte Mark Stephen NAILOR.**

No. 14–02–00444–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 24, 2003.

Randy Schaffer, Houston, for appellant.

Alan Curry, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

In this appeal from the denial of a post-conviction writ of habeas corpus, appellant Mark Stephen Nailor claims he was denied effective assistance of counsel at the guilt-innocence stage of his trial on an assault charge. We affirm.

## Background

Appellant was charged with assaulting his live-in girlfriend, Ella Vines. On April 23, 2000, Officer Ludwig of the Houston Police Department responded to a call that an assault had occurred at appellant's house. When Ludwig arrived, he encountered Vines, who was "covered in blood" and was very upset. Ludwig testified Vines told him that she had been punched in the face and that her head had been slammed into the floor. Vines's friend, Becky Clevinger, testified Vines called her that same evening and told her appellant had hit her. Officer Chad Deasey, who was called to back up Officer Ludwig, testified he found appellant walking in a drainage ditch about eight to nine blocks

from the house. Appellant was apprehended and brought to the house. Officer Ludwig stated appellant later told him "he had been framed."

Vines's daughter testified she received a call that appellant had hit her mother and she was at the hospital. She further stated that when she arrived at Vines's hospital room, the first thing Vines said was "she was tired of being hit." The State also introduced copies of Vines's hospital records, which included the following notation: "[Patient] states assaulted by her boyfriend, hit [between] the eyes [with] closed fist."

Vines did not appear at trial. However, her daughter testified that Vines is scared of appellant and that she "is afraid he is going to do something if she came." Although appellant's counsel moved to strike this testimony, the trial court overruled the objection.

Appellant testified on his own behalf. He stated that when he came home on April 23, 2000, Vines accused him of having an affair. Vines then picked up a brass eagle and raised it above her head, threatening appellant. According to appellant, he raised his arms to protect himself and knocked the eagle out of Vines's hands when it apparently struck her. Appellant testified Vines then pulled him by the shoulder and he fell on top of her. He then got up and left the house.

Appellant's counsel also introduced a handwritten letter, dated April 24, 2000, and signed by Vines.[1] The letter reads as follows:

To whom this may concern

On April 23, 2000 my girlfriend called HPD because I, Ella Vines, was injured. I was angry at Mark Nailor. He struck me twice, but I lied, I actually tripped

---

1. Vines's signature was authenticated through the testimony of a notary who signed the letter and testified that he compared the signature on the letter to Vines's driver's license.

cutting my head, and ending up on the floor.

Appellant was convicted of misdemeanor assault and sentenced to 120 days in the Harris County Jail. Following his conviction, appellant retained new counsel and filed a motion for new trial. In his motion, appellant claimed his trial counsel was ineffective. The trial court held a hearing, at which appellant's trial counsel testified. The court denied appellant's motion.

On direct appeal, appellant argued (1) the trial court erred in failing to instruct the jury on self-defense and (2) appellant's trial counsel provided ineffective assistance. In an unpublished opinion, the San Antonio Court of Appeals affirmed the conviction, and the Court of Criminal Appeals refused appellant's petition for discretionary review. *See Nailor v. State*, No. 04–00–00642–CR, 2001 WL 840553 (Tex.App.-San Antonio July 25, 2001, pet. ref'd) (not designated for publication). Appellant then filed a writ of habeas corpus, again asserting his trial counsel's assistance was ineffective. The trial court denied the writ, and this appeal followed.

### Effect of Appellant's Direct Appeal

█ We must first determine whether the disposition of appellant's ineffective-

assistance claim on direct appeal prevents him from asserting the same claim in his writ of habeas corpus. Generally, an appellant may not raise a claim on habeas corpus that already has been raised and rejected on direct appeal. *Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex.Crim.App. 1984). However, the record developed in a direct appeal is often inadequate to evaluate properly an ineffective-assistance claim. *See Ex parte Torres*, 943 S.W.2d 469, 475 (Tex.Crim.App.1997). In *Torres*, the Court of Criminal Appeals held that because the record on direct appeal contained insufficient evidence to evaluate Torres's ineffective-assistance claim, the rejection of that claim on direct appeal did not bar re-litigation of the claim on habeas corpus "to the extent that [Torres] seeks to gather and introduce additional evidence not contained in the direct appeal record." *Id.* We therefore must determine whether the record on direct appeal in this case was adequate to evaluate appellant's ineffective-assistance claim.

█ In his application for habeas relief, appellant set forth ten examples of how trial counsel's conduct was allegedly deficient. Nine of the ten alleged deficiencies were also raised on direct appeal.[2] The

---

2. The alleged deficiencies that were raised both on direct appeal and in this appeal are as follows:
   - Counsel failed to object to a police officer's opinion that appellant had not been attacked.
   - Counsel failed to object to the opinion of Vines's daughter regarding why Vines did not testify.
   - Counsel introduced a letter that was inconsistent with the theory of the defense.
   - Counsel elicited that appellant had been convicted of assaulting Vines.
   - Counsel failed to object to the prosecutor cross-examining appellant about his prior drug use.
   - Counsel failed to object to the prosecutor asking appellant whether he beat his ex-

   wife and, despite his denial, arguing during summation that appellant was a wife-beater who liked to beat women.
   - Counsel failed to present independent evidence of Vines's mental problems and her previous assault on appellant.
   - Counsel failed to request a limiting instruction that the jury could consider appellant's assault conviction only to determine his credibility and not as substantive evidence of guilt.
   - Counsel failed to object to argument that appellant had threatened to hurt Vines if she testified.

   Appellant's remaining example of his trial counsel's allegedly deficient conduct is that counsel relied on self-defense, which was not raised by the evidence.

only additional evidence appellant presented as support for habeas relief is an affidavit from appellant's trial counsel, John Brukner. Of the nine incidents of ineffective assistance that were raised both in the direct appeal and in his habeas application, Brukner's affidavit presents no additional evidence as to four: (1) counsel's offer into evidence of Vines's letter, which was allegedly inconsistent with appellant's defensive theory at trial, (2) counsel's elicitation of appellant's previous assault conviction, (3) counsel's failure to request a limiting instruction regarding that assault conviction, and (4) counsel's failure to present evidence of Vines's alleged mental problems and her alleged previous assault on appellant. Because appellant presented no additional evidence on these ineffective-assistance allegations outside of the direct appeal record, these four arguments cannot support his application for habeas relief.[3]

■ On appellant's remaining arguments, however, Brukner's affidavit does present additional evidence that was not in the direct appeal record. Although Brukner testified at a hearing on appellant's motion for new trial and presumably could have provided the information that appears in his affidavit at that hearing, we note that the reporter's record of the trial proceedings was not prepared until four months after the new-trial hearing. Thus, appellant's new counsel did not have that transcript available to him while developing the record on direct appeal. *See Tor-* res, 943 S.W.2d at 475 (stating that a motion for new trial is often inadequate for expanding the record on direct appeal in part because the trial record has not yet been transcribed). Accordingly, we review those portions of appellant's ineffective-assistance claim to which appellant has presented additional evidence not found in the record on direct appeal. *See id.*

### Ineffective Assistance of Counsel

The standard for determining claims of ineffective assistance under the Sixth Amendment is well established. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on a claim of ineffective assistance an appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for his trial counsel's deficient representation, a different outcome would have resulted. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex. Crim.App.1996). The review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Id.* Appellant must also affirmatively prove prejudice. *Id.* Appellant must prove that the errors, judged by the totality of the representation rather than by isolated instances

---

**3.** We also note that for each of these four examples of allegedly deficient performance, the San Antonio court concluded that counsel's performance did not support a finding of ineffective assistance. Thus, under the law-of-the-case doctrine, these allegations would not support appellant's ineffective-assistance claim. *See Howlett v. State,* 994 S.W.2d 663, 666–67 (Tex.Crim.App.1999).

At oral argument, appellant's counsel suggested the law-of-the-case doctrine does not apply in this case because the Court of Criminal Appeals refused appellant's petition for discretionary review on direct appeal. However, the court in *Howlett* applied the law-of-the-case doctrine even though the defendant's initial appeal in that case (from the denial of a pretrial writ of habeas corpus) had not been reviewed by the Court of Criminal Appeals. *See id.*

of error, denied him a fair trial. *Id.* The appellant's failure to make the required showing of deficient representation or sufficient prejudice defeats an ineffective-assistance claim. *Id.* We begin by examining each of the alleged errors made by appellant's trial counsel.

### Counsel's Reliance on Self–Defense

■ Appellant first claims his trial counsel was ineffective because he relied on self-defense, a theory that was not raised by the evidence. Brukner states in his affidavit that he believed appellant's version of the events demonstrated that he acted in self-defense. Because this was merely a strategic decision on the part of appellant's trial counsel, we may not review this decision through the distorting effects of hindsight. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. However, this is exactly what appellant asks us to do. Appellant himself argued on direct appeal that the trial court erred in refusing to instruct the jury on self-defense and that his trial counsel was deficient for failing to object to this omission from the jury charge. After the court of appeals determined that this defense was unsupported by the evidence, appellant abruptly changed tack and urged that his counsel was deficient for arguing a defense that was unsupported by the evidence. Appellant has not demonstrated that counsel's strategic decision to rely on self-defense was unreasonable when evaluated from his perspective at the time. *See id.*

Furthermore, a review of the record reveals that appellant's counsel did not rely on self-defense to the exclusion of other defenses. Appellant claims that by advancing a self-defense claim, appellant's trial counsel "essentially conceded that appellant had assaulted Vines." However, in his opening statement, appellant's counsel stated:

[Appellant] backed away and as he was backing away he tried to knock the eagle out of her hand and as he did his left hand hit it and broke his little finger. Accidentally that eagle struck her wherever the injury was.... That's what the defendant will show you and that's what we are going to prove, that he acted reasonably in self-defense trying to avoid injury to himself.

Appellant's testimony was consistent with his counsel's opening statement: appellant claimed he was being threatened by Vines and that he never intended to injure her. Based on our review of the record, we cannot say that counsel's supposed reliance on self-defense constituted deficient performance.

### Opinion Testimony from Investigating Officer

■ Appellant claims that trial counsel erred by failing to object to testimony from the investigating police officer that, in the officer's opinion, Vines had not attacked appellant. However, courts allow police officers to proffer an opinion when it is based on their training or experience and their personal knowledge of the event in question. *See, e.g., Reece v. State,* 878 S.W.2d 320, 325 (Tex.App.-Houston [1st Dist.] 1994, no pet.) (allowing an officer to testify, based upon his training and experience, that a defendant's actions were consistent with someone selling cocaine); *Williams v. State,* 826 S.W.2d 783, 785 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd) (using past experience, a police officer was permitted to testify, as either a lay witness or an expert, that he interpreted the defendant's actions to be a drug transaction). Here, the record shows that the investigating officer had been a patrol officer for sixteen years and testified that approximately ten to twenty percent of the calls he receives are domestic assaults. Thus, the officer possesses adequate expe-

rience to opine whether appellant had been attacked. Trial counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel. *Webb v. State,* 991 S.W.2d 408, 419 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd).

### Testimony from Complainant's Daughter

■ Appellant next claims his trial counsel failed to object to testimony from Vines's daughter that Vines did not testify because she was "scared" of appellant. However, the record shows, and the appellate court on direct appeal concluded, that appellant's trial counsel did make a timely objection by moving to strike this testimony immediately after it was given. Accordingly, appellant has not demonstrated that his trial counsel's performance with respect to this objection was deficient.

### Cross–Examination about Drug Use

■ Next, appellant alleges his trial counsel failed to object to a single question from the prosecutor on cross-examination regarding appellant's drug use. While appellant was on the stand, the prosecutor asked him, "Isn't it true, sir, that you do drugs?" We agree with appellant that this question was objectionable, for there was no proper basis for inquiring about appellant's previous drug use. *See* Tex.R. Evid. 404, 608(b); *Hines v. State,* 571 S.W.2d 322, 325 (Tex.Crim.App. [Panel Op.] 1978). Brukner stated in his affidavit that his failure to object to such testimony was not strategic, but rather he "was not aware that this evidence was inadmissible." Accordingly, we find trial counsel's failure to object to this question was deficient.

### Cross–Examination about Assault on Appellant's Ex–Wife and Related Jury Argument

■ Appellant next asserts his trial counsel was deficient for failing to object to a question from the prosecutor asking whether appellant's wife divorced him because he beat her also. On direct appeal, the court of appeals held the prosecutor's question was proper to show appellant's intent in response to his asserted defenses of self-defense and accident. *Nailor,* slip op. at 6, 2001 WL 840553, at *3; *see* Tex.R. Evid. 404(b). Thus, the law-of-the-case doctrine governs this issue, and counsel's failure to object cannot serve as a basis for an ineffective-assistance claim. *See Howlett,* 994 S.W.2d at 666–67.

■ Appellant further complains that counsel failed to object to a portion of the State's argument referring to appellant as a "wife beater" who "likes to beat women." Appellant claims this portion of the State's summation was improper because appellant denied beating his wife, and there was no evidence in the record that appellant assaulted anyone other than Vines, who was not his wife. However, we conclude that the prosecutor was not referring to appellant's alleged assault on his ex-wife, but rather an assault charge against Vines from approximately eighteen months earlier to which appellant pleaded guilty.[4] Viewed in context, we cannot say that the State's single reference to appellant as a "wife beater" constituted improper jury argument. Accordingly, trial counsel's failure to object to this argument cannot constitute ineffective assistance.

---

4. The relevant portion of the State's argument is as follows:

> [Appellant] is in denial that he is an abusive person, that he likes to beat women. He told you on the stand that he was convicted before. "Well, I just pled guilty." That's what he said, isn't it? Why did he say that? Because he is in denial. He doesn't accept the fact that he is a wife beater.

*Jury Argument about Complainant's Failure to Testify*

■ Appellant claims his trial counsel should have objected to the State's argument that appellant threatened to hurt Vines to prevent her from testifying. In her summation, the prosecutor argued that Vines did not testify because appellant told her he would hurt her if she did.[5] However, the only evidence in the record was Vines's daughter's testimony that Vines was "scared" of appellant and that she was "afraid he is going to do something if she came." Contrary to the prosecutor's statement during jury argument, the record contains no evidence that appellant ever threatened to hurt Vines if she testified. In his affidavit, Brukner stated that he did not object to this argument because he believed it was based on the testimony, and only after reviewing the record did he realize that the daughter did not testify that appellant threatened Vines. Accordingly, we find that counsel's failure to object to this portion of the State's argument was deficient.

*Failure to Investigate*

■ In addition to the ten specific examples of allegedly deficient performance, appellant also suggests his trial counsel did not adequately investigate the facts of his case. However, appellant provides no explanation of where his trial counsel's investigation fell short. Appellant did not give specific examples of areas his counsel should have investigated better or did not investigate but should have. Accordingly, appellant failed to show that his counsel's investigation constituted ineffective assistance. *See Dewberry v. State,* 4 S.W.3d 735, 757–58 (Tex.Crim.App.1999).

To summarize, appellant has presented evidence of two errors in the performance of appellant's trial counsel: (1) counsel's failure to object to a question about whether appellant used drugs and (2) counsel's failure to object to the prosecutor's statement during jury argument that appellant had threatened to hurt Vines if she testified. We must now determine whether, based on these two incidents of deficient performance, counsel's representation fell below an objective standard of reasonableness.

Brukner states in his affidavit that there was no strategic reason for his failure to object to the question regarding appellant's previous drug use. Instead, he claims he did not know this evidence was inadmissible. Counsel's admitted lack of familiarity with the rules of evidence regarding impeachment is particularly troublesome when, as here, the defendant testified. With respect to appellant's purported threats against Vines to keep her from testifying, Brukner states he erroneously believed the testimony of Vines's daughter supported this argument. While a mistake in recalling specific testimony is not per se unreasonable, appellant's counsel should have been familiar with the substance of this testimony because he moved to strike it immediately after it was given. The trial court then had the testimony re-read outside the jury's presence and overruled the objection. Furthermore, this was a relatively short trial, with

---

5. The State argued the following regarding Vines's absence (emphasis added):

    But what did [Vines's daughter] tell us about why her mother was not here today? Think about it. What did she say? She is scared. He has threatened her. *He said he was going to hurt her if she came down here* today. Think about it, ladies and gentlemen, reason and common sense. A man who has been hitting you for a number of years *tells you he is going to hurt you again if you come down to testify.* Use your reason and common sense. Are you going to come and testify? Probably not.

only five witnesses called by the State. We conclude that counsel's performance in this case fell below an objective standard of reasonableness.

### Prejudice

Even if appellant's trial counsel's representation fell below a reasonable standard of conduct, appellant cannot succeed on his ineffective-assistance claim unless he affirmatively demonstrates a reasonable probability that the outcome in his case would have been different but for counsel's deficient performance. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. To determine whether counsel's deficiency resulted in prejudice to the appellant, we focus upon the weight, nature, and focus of the evidence admitted; the role that evidence played in the State's final argument; and the relative role the evidence played in the outcome of the trial. *See Ex parte Menchaca,* 854 S.W.2d 128, 133 (Tex.Crim.App.1993).

In this case, there were no witnesses to the alleged assault. Appellant does not contest that Vines suffered an injury as a result of an altercation between the two of them. The critical question is whether appellant hit Vines with his hand or whether Vines was injured accidentally when appellant knocked the brass eagle out of Vines's hands. Although Vines did not testify, the State presented three witnesses—the investigating officer, a friend of Vines, and Vines's daughter—who each testified that, within hours after she was injured, Vines said appellant had hit her. In addition, Vines's hospital records reflect that Vines stated she was "assaulted by her boyfriend, hit [between] the eyes [with] closed fist." In response, appellant relied on his own testimony and the letter

apparently recanting Vines's claim that appellant hit her.

We conclude that appellant has failed to establish the prejudicial effect of appellant's trial counsel's deficient performance. The jury heard evidence from four separate sources, two of which had no apparent bias, that Vines said appellant hit her. The only directly contrary evidence was presented by appellant, who testified he was defending himself when Vines was accidently injured. However, the jury heard evidence that appellant pleaded guilty to a previous assault against appellant, which the jury could have weighed against his alleged lack of intent to injure Vines. In addition, after the incident, appellant was apprehended in a drainage ditch several blocks from the house, walking away from the scene. Finally, appellant's statement to Officer Ludwig that he "had been framed" seems inconsistent with his claim that Vines's injury was an accident. Given the state of the evidence, and because the evidence of appellant's drug use consisted of a single question and answer that played no role whatsoever in the State's jury argument, we cannot say that counsel's failure to object so prejudiced appellant as to undermine confidence in the jury's verdict.

Similarly, we cannot say there is a reasonable probability the outcome would have been different had counsel properly objected to the State's argument regarding appellant's alleged threats. We recognize that courts have found it to be reversible error for a prosecutor to imply without evidentiary support that a witness has been frightened from the courtroom by the defendant. *See Thomas v. State,* 519 S.W.2d 430, 431 (Tex.Crim.App.1975); *Person v. State,* 706 S.W.2d 153, 154–55 (Tex.App.-Houston [1st Dist.] 1986, no pet.) Here, however, there was testimony from Vines's daughter that Vines was

afraid and believed appellant would "do something" if she testified. The credibility of Vines's written statement and the weight, if any, to be given to her failure to testify both turn on Vines's subjective belief of a threat from appellant, not the existence of any actual threat. Although the State's argument that appellant actually threatened Vines might provide extra credibility to her subjective fear, we conclude it does not add so much weight to the State's case that it undermines confidence in the verdict.

### Conclusion

Our review of the entire record leads us to conclude that appellant has not established that his trial counsel's errors so prejudiced him that he was denied a fair trial. Accordingly, we overrule his sole point of error claiming ineffective assistance of counsel, and we affirm the trial court's judgment denying appellant relief.