IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1109-03






EX PARTE MARK STEPHEN NAILOR, Appellant










ON APPELLANT'S PETITION FOR 

DISCRETIONARY REVIEW 

FROM THE FOURTEENTH COURT OF APPEALS 

HARRIS COUNTY






 Cochran, J., delivered the opinion for a unanimous Court.


OPINION 



 In this case we must decide whether ineffective assistance of counsel claims rejected on direct
appeal must be reconsidered along with other claims of deficient attorney conduct raised on a writ of
habeas corpus under the "totality of the representation" standard of review. (1) The Fourteenth Court of
Appeals held that appellant's failure to offer additional evidence in support of those specific allegations of
deficient performance already rejected by the Fourth Court of Appeals barred relitigation of those claims
on habeas corpus review. (2) The Fourteenth Court of Appeals also held that trial counsel was not ineffective
for: (1) relying upon a defensive theory of "accidental injury" or "no intent to harm" rather than the law of
self-defense; and (2) failing to object to a police officer's opinion testimony that appellant was not
"attacked." We agree with the Fourteenth Court of Appeals on all three issues and therefore affirm its
judgment.

I. 

 Officer Ludwig of the Houston Police Department responded to an assault call at appellant's
residence. When Officer Ludwig arrived, he found appellant's live-in girlfriend, Ella Vines, covered in
blood. Ella was terribly upset and told Officer Ludwig that appellant had punched her in the face and
slammed her head into the floor. The officer found a broken ceramic figurine with blood on it in the house. 
Ella did not testify at trial, but other evidence showed that she had been at appellant's home all day
watching his children from a previous marriage. Ella and appellant had a rocky relationship and on several
occasions the police had been called to the residence. Ella was transported to the hospital for treatment
of a laceration on her forehead. Ella's daughter arrived at the hospital and spoke with her mother. 
According to her daughter's testimony, Ella said that she was tired of being hit and that she was leaving the
appellant. Specifically, Ella told her daughter that she had been hit with a porcelain figurine.

 Appellant testified that when he came home on April 23, 2000, Ella accused him of having an affair,
raised a brass eagle (3) over her head and threatened him. Appellant testified that he raised his arms to
protect himself. In doing so, he knocked the brass eagle out of Ella's hands which caused the eagle to
strike her in the face. Appellant said that Ella then pulled him by the shoulder causing him to fall on top of
her. He got up and left the house. 

 Shortly thereafter, Officer Chad Deasey found appellant walking in a drainage ditch eight-to-nine
blocks from his home. Appellant did not have any cuts, bruises, or injuries. 

 A jury convicted appellant of misdemeanor assault and he was sentenced to 120 days confinement
in the Harris County Jail. After hiring new counsel, appellant filed a motion for new trial. In this motion,
appellant made four allegations of ineffective assistance of counsel (the "first four allegations" (4)). After a
hearing in which appellant's trial counsel testified, the trial court denied the motion. On direct appeal to the
Fourth Court of Appeals, appellant alleged the same four grounds of ineffective assistance that he had
raised in the motion for new trial and added another five allegations of ineffective assistance (the "additional
five allegations" (5)). The Fourth Court of Appeals found that trial counsel's representation was not deficient
with respect to the first four allegations. With respect to the additional five allegations, the Fourth Court
of Appeals found that the record was inadequate to evaluate appellant's claims. Thus, on direct appeal,
the Fourth Court of Appeals rejected the first four allegations on their merits and did not reach the merits
of the additional five allegations. (6) 

 Next, appellant filed a writ of habeas corpus in the trial court alleging ten allegations of ineffective
assistance of counsel (the first four allegations, plus the additional five allegations, plus a new one (7)). 
Because the Fourth Court of Appeals had determined that the direct appeal record was inadequate to
address the additional five allegations, appellant sought to develop a habeas record with respect to these
additional five allegations, plus the new one (the "additional six allegations"), by submitting the affidavit of
trial counsel. Trial counsel's affidavit addressed only the issues raised by the additional six allegations. (8) 

 The habeas court denied relief, and appellant appealed to the Fourteenth Court of Appeals. In its
thorough and thoughtful opinion, that court refused to consider the merits of the first four allegations because
these claims had already been rejected by the Fourth Court of Appeals, and this Court had denied
appellant's petition for discretionary review in that appeal. However, the Fourteenth Court of Appeals did
address the merits of the additional six allegations raised by appellant in his application for a writ of habeas
corpus which the Fourth Court of Appeals, in its equally thorough opinion, had not rejected on the merits. 
It found that two of the additional six allegations constituted deficient performance. (9) However, appellant
did not prove, by a preponderance of the evidence, that these two deficiencies prejudiced his defense. (10) 
Thus, while appellant satisfied the first prong of Strickland, he failed to satisfy the second prong, and
therefore the court of appeals affirmed the trial court's denial of habeas relief.II.

 In Hernandez v. State, (11) this Court adopted the two-prong test articulated by the United States
Supreme Court in Strickland v. Washington (12) for analyzing ineffective assistance of counsel claims. (13) 
Under this well-established standard, "[a]ny allegation of ineffectiveness must be firmly founded in the
record." (14) First, a defendant must show, by a preponderance of the evidence, that counsel's performance
was constitutionally deficient. (15) Second, the defendant must show that this deficient performance
prejudiced his defense. (16) Under this two-pronged analytical framework, a defendant must overcome the
"strong presumption that counsel's performance fell within the wide range of reasonable professional
assistance." (17) Moreover, "[a]ppellate review of defense counsel's representation is highly deferential and
presumes that counsel's actions fell within the wide range of reasonable and professional assistance." (18) 


 Usually, ineffective assistance of counsel claims are analyzed under the "totality of the
representation" standard. (19) That is, when a reviewing court considers a claim of ineffective assistance of
counsel, it must first analyze all allegations of deficient performance, decide whether counsel's conduct was
constitutionally deficient, and, if so, then consider whether those specific deficient acts or omissions, in their
totality, prejudiced the defense. 

 III.

 Claims of ineffective assistance of counsel are frequently raised on direct appeal without the benefit
of an adequate record and then re-urged on a writ of habeas corpus after they have been adequately
developed in a post-conviction evidentiary hearing. (20) In Ex parte Torres, (21) we held that "[b]ecause the
direct appeal record contained insufficient evidence to evaluate the ineffective assistance issue, ... the
rejection of [applicant's] claim on direct appeal does not bar relitigation of his claim on habeas corpus to
the extent that applicant seeks to gather and introduce additional evidence not contained in the direct appeal
record." (22) 

 Claims raised and rejected on direct appeal are generally not cognizable on habeas corpus. (23) 
However, in Ex parte Torres we stated: "this doctrine should not be applied where [1] direct appeal
cannot be expected to provide an adequate record to evaluate the claim in question, and [2] the claim might
be substantiated through additional evidence gathering in a habeas corpus proceeding." (24) Thus, if the
appellate court rejects a claim of ineffective assistance of counsel because the record on direct appeal does
not contain sufficient information to adequately address and resolve a particular allegation of counsel's
deficient performance, the defendant may re-urge consideration of that specific act or omission in a later
habeas corpus proceeding if he provides additional evidence to prove his claim. 

 The exception articulated in Ex parte Torres does not apply here because the record on direct
appeal was adequate to evaluate the first four ineffective assistance allegations. On direct appeal, the
Fourth Court of Appeals found that these first four allegations did not satisfy the first prong of Strickland,
i.e., appellant did not establish, by a preponderance of the evidence, that trial counsel's performance was
deficient. (25) These four claims were rejected on their merits.

 Appellant then filed an application for a writ of habeas corpus in the trial court, and raised the same
nine allegations of ineffective assistance of counsel, plus a new one. In support of his writ of habeas corpus,
appellant submitted the affidavit of his trial counsel to develop the habeas record on the additional six
allegations. The trial court denied relief. Appellant appealed the denial of habeas relief to the Fourteenth
Court of Appeals. That court concluded that the first four allegations of ineffective assistance could not be
reconsidered on habeas review because appellant did not provide additional evidence in support of these
specific allegations. (26) We agree with the court of appeals. We hold that specific allegations of deficient
attorney performance that were rejected on direct appeal are not cognizable on habeas corpus as a part
of a larger ineffective assistance of counsel claim when the defendant does not offer additional evidence to
support that specific claim of deficient performance in the habeas proceeding. (27) We therefore overrule
appellant's first ground for review. 

IV.


 In his second ground for review, appellant argues that "[t]he Fourteenth Court of Appeals erred
in holding that counsel was not ineffective in relying on a defense that the Fourth Court of Appeals held
was not raised by the evidence." On direct appeal, appellant argued that his trial counsel was
ineffective for not objecting to the trial court's omission of self-defense from the jury charge. The
Fourth Court of Appeals held that appellant was not entitled to an instruction on self-defense and
therefore his trial counsel was not ineffective for failing to object to its omission. In his application for a
writ of habeas corpus, appellant argued that trial counsel was ineffective for relying on a defense that
was not raised by the evidence. According to appellant, trial counsel surely must have been ineffective
one way or the other. We disagree and conclude that appellant's trial defense was two-fold: (1) he
did not intend to cause any harm; and (2) his acts were solely defensive in nature and were intended
only to prevent Ella from injuring him with the brass eagle.

 A defendant is entitled to an instruction on the law of self-defense if there is some evidence that
he intended to use force against another and he did use force, but he did so only because he reasonably
believed it was necessary to prevent the other's use of unlawful force. (28) In Ferrel v. State, (29) this Court
stated that "[a] defendant is entitled to an instruction on self-defense if the issue is raised by the
evidence." (30) However, "if the evidence, viewed in the light most favorable to the defendant, does not
establish self-defense, the defendant is not entitled to an instruction on the issue." (31) 

 On direct appeal in this case, the Fourth Court of Appeals held that "because Nailor testified
and argued that the victim was accidently injured and that he did not strike the victim with his hand as
alleged by the State, Nailor was not entitled to a jury instruction on self-defense." (32) In his opening
statement, trial counsel argued that it was an accident that the brass eagle struck the complainant. 
Similarly, appellant testified that when he raised his arms he accidently knocked the brass eagle out of
Ella's hands and it then fell and hit her in the face. Appellant did not, at least overtly, rely on the law of
self-defense; he testified to the lack of a culpable mens rea, and he denied that the act the State alleged
as causing her injury-striking Ella with his hand-was, in fact, the cause of her injury. According to
appellant, it was the falling brass eagle that caused her injury. Therefore, appellant's defense was more
in the nature of a denial of two of the State's alleged elements, rather than an admission of those
elements with a legal justification for them. (33)
 This case, then, is analytically similar to our decision in
Young v. State. (34) 

 In Young, the defendant argued that his attorney was constitutionally deficient because the
defendant's testimony raised the legal defense of necessity, but trial counsel failed to request a jury
instruction on the law of necessity. (35) This Court disagreed and held that the defendant denied
committing the acts alleged and denied acting with any intent to cause the victim's death; therefore, his
testimony disputed the elements of the State's case; it did not justify those intentional acts with a distinct
legal defense. We explained:

 In the present case, Appellant did not present the defense of necessity at trial. 
While trial counsel argued Appellant acted reasonably, according to Appellant's
testimony regarding his actions, and that these actions were necessary to save his life,
such an argument does not present the defense of necessity. To raise necessity,
Appellant must admit he committed the offense and then offer necessity as a
justification. Here, Appellant did not admit to attempted murder, albeit one that was
justified by the defense of necessity. Appellant argued he did not commit the offense
because he did not have the requisite intent and he did not perform the actions the State
alleged. Appellant was therefore not entitled to a jury instruction on the defense of
necessity. 

 Because Appellant was not entitled to a jury instruction on necessity, Appellant
has not shown that counsel's performance in failing to request an instruction was
deficient under the first part of the Strickland test. (36) 

 Similarly, appellant did not rely upon the law of self-defense at trial. Both trial counsel's
argument and appellant's testimony centered on a lack of intent, i.e., it was an accident. As in Young,
appellant argued that "he did not have the requisite intent and he did not perform the actions the State
alleged." (37) Accordingly, appellant was not entitled to an instruction on self-defense. Because appellant
has not shown that his trial counsel relied on the statutory law of self-defense, he has failed to establish,
by a preponderance of the evidence, that his trial counsel was deficient either in failing to request an
instruction on the law of self-defense or, conversely, in relying upon the defensive position that
appellant's testimony raised. Appellant's second ground for review is overruled. 

V.

 In his third and final ground for review, appellant argues that "the [Fourteenth] Court of
Appeals erred in holding that counsel was not ineffective in failing to object to a police officer's opinion
regarding the ultimate issue." Specifically, appellant complains that appellant's trial counsel was
constitutionally deficient because he did not object to Officer Ludwig's opinion testimony that appellant
had not been attacked. (38) Under Texas Rule of Evidence 704, "[t]estimony in the form of an opinion or
inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided
by the trier of fact." (39) Rule 701 (40) permits a lay witness to offer opinion testimony if that opinion is "(a)
rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness'
testimony or the determination of a fact in issue." (41) 

 Because a lay witness may offer an opinion on an ultimate issue, appellant's contention that his
trial counsel fell below an objective standard of reasonable competence for failing to object to Officer
Ludwig's testimony regarding an ultimate issue is without merit. Whether the officer's testimony might
have been objectionable on another basis is a question of the law of evidence that does not require
decision in this case. All we must, and do, decide is that a competent trial counsel is not required to
object to opinion evidence on the ground that it goes to an ultimate issue. Appellant's third ground for
review is overruled.

 Having rejected appellant's three grounds for review, we affirm the judgment of the court of
appeals. 


Cochran, J.

 

Delivered: March 24, 2004.


Publish

1. We granted appellant's petition for discretionary review on the following three grounds: (1)
The court of appeals erred in refusing to consider allegations of trial counsel's deficient performance
that were rejected on appeal in determining whether the totality of the representation was ineffective;
(2) The Fourteenth Court of Appeals erred in holding that counsel was not ineffective in relying on a
defense that the Fourth Court of Appeals held was not raised by the evidence; and (3) The court of
appeals erred in holding that counsel was not ineffective in failing to object to a police officer's opinion
regarding the ultimate issue. 
2. Appellant was convicted in County Court at Law No. 9 of Harris County. Appellant's
conviction was affirmed on direct appeal to the Fourth Court of Appeals. Nailor v. State, No. 04-00-00642-CR, 2001 Tex. App. LEXIS 4899 (San Antonio, July 25, 2001, pet. denied) (not designated
for publication). This appeal comes to us by way of the Fourteenth Court of Appeals which affirmed
the trial court's denial of a writ of habeas corpus. Ex parte Nailor, 105 S.W.3d 272 (Tex.
App.--Houston [14th Dist.] 2003). 
3. There was some discrepancy between the witnesses whether the object involved was a
ceramic or porcelain figurine of a cat or a brass eagle.
4. These four allegations were that trial counsel: 


 elicited evidence that applicant had been previously convicted of assaulting Ella; 
 failed to present independent evidence of Ella's mental problems and her previous assault on
applicant; 
 failed to request a limiting instruction that the jury could consider applicant's prior assault
conviction only in determining his credibility and not as substantive evidence of his guilt; and 
 introduced a letter that was inconsistent with the defense theory. 
5. These five allegations were that trial counsel: 


 failed to object to the prosecutor cross-examining applicant about his prior drug use; 
 failed to object to the prosecutor asking applicant whether he beat his ex-wife and, despite his
denial, arguing during summation that he was a wife-beater who liked to beat women; 
 failed to object to a police officer's opinion that applicant had not been attacked; 
 failed to object to Ella's daughter's opinion as to why Ella did not testify at trial; and 
 failed to object to argument that applicant had threatened to hurt Ella if she testified. 
6. Nailor v. State, No. 04-00-00642-CR, 2001 Tex. App. LEXIS 4899 (San Antonio, July
25, 2001, pet. denied) (not designated for publication). 
7. The new allegation was that trial counsel erroneously relied on the law of self-defense, which
was not raised by the evidence.
8. According to appellant, he did not develop additional evidence on the first four allegations that
were rejected on their merits by the Fourth Court of Appeals because "[t]here was no reason for
counsel to address the issues about which he had already testified." 
9. Ex parte Nailor, 105 S.W.3d at 278-80.
10. Id. at 280. 
11. 726 S.W.2d 53 (Tex. Crim. App. 1986). 
12. 466 U.S. 668 (1984). 
13. Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). "This two-pronged test
is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a reliable result." Thompson
v. State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999). 
14. Thompson, 9 S.W.3d at 813.
15. Strickland v. Washington, 466 U.S. 688, 687 (1984). "This requires showing that counsel
made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by
the Sixth Amendment.
" Id. 
16. Id. at 687. "This requires showing that counsel's errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable." Id. 
17. Thompson, 9 S.W.3d at 813 (citing Strickland, 466 U.S. at 689). 
18. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). 
19. Thompson v. State, 9 S.W.3d at 813; Wilkerson v. State, 726 S.W.2d 542, 548 (Tex.
Crim. App. 1986); Ex parte Raborn, 658 S.W.2d 602 (Tex. Crim. App. 1983). But see Thompson,
9 S.W.3d at 813 (stating that "while this Court has been hesitant to designate any error as per se
ineffective assistance of counsel as a matter of law, it is possible that a single egregious error of
omission or commission by appellant's counsel constitutes ineffective assistance") (internal quotations
omitted). 
20. See Bone, 77 S.W.3d at 833 (stating that "[u]nder normal circumstances, the record on
direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking
in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was
reasonable and professional. As this Court recently explained, rarely will the trial record contain
sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation: 
'in the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately
reflect the failing of trial counsel'").
21. 943 S.W.2d 469 (Tex. Crim. App. 1997). 
22. Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). 
23. See Ex parte Acosta, 672 S.W.2d 470, 471-72 (Tex. Crim. App. 1984); Ex parte
Schuessler, 846 S.W.2d 850, 852 n.6 (Tex. Crim. App. 1993); Ex parte Torres, 943 S.W.2d at
475. 
24. Ex parte Torres, 943 S.W.2d at 475. 
25. Nailor v. State, No. 04-00-00642-CR, 2001 Tex. App. LEXIS 4899 (San Antonio, July
25, 2001, pet. denied) (not designated for publication). The Fourth Court of Appeals also held that the
direct appeal record was inadequate to address the additional five allegations of ineffective assistance. 
Id. 
26. Ex parte Nailor, 105 S.W.3d at 275-76. The Fourteenth Court of Appeals also held that
appellant's first four allegations could not support his application for habeas relief under the law-of-the-case doctrine because the Fourth Court had already concluded that counsel's performance was not
deficient with respect to the first four allegations. Id. at 276 n.3. We need not resolve the issue of the
applicability of the law-of-the-case doctrine because that was an alternate holding in the court below. 
It is sufficient for present purposes that appellant's four previously rejected claims-whether they were
rejected on the merits or because the record evidence was insufficient to prove them-were not
furthered developed during the habeas proceeding. 
27. In this case, we are not faced with the converse situation in which a reviewing court on direct
appeal finds that trial counsel provided constitutionally deficient assistance in some specific regard, but it
cannot assess the merits of other claims because the record is insufficient, and therefore concludes that,
under the totality of circumstances, the deficient performance did not prejudice the defendant. The
defendant then files a writ of habeas corpus, setting out all of the same allegations and offers additional
evidence on the claims that had not been addressed on direct appeal. 
28. Tex. Penal Code § 9.31(a) ("a person is justified in using force against another when and to
the degree he reasonably believes the force is immediately necessary to protect himself against the
other's use or attempted use of unlawful force").
29. 55 S.W.3d 586 (Tex. Crim. App. 2001). 
30. Ferrel v. State, 55 S.W.3d 586 (Tex. Crim. App. 2001).
31. Id. at 591. 
32. Nailor v. State, 2001 Tex. App. LEXIS 4899 at *3.
33. See generally, Sanders v. State, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986), limited by
Willis v. State, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990). In Sanders, this Court explained the
nature of statutory legal defenses and when they are raised so as to require a jury instruction:

 A perusal of the new Penal Code assures one that a defense does not merely negate an
element of an offense. Rather, in all of the Code's defenses, one principle runs
consistently throughout: evidence which constitutes a defense requires the accused to
admit the commission of the offense, but to justify or excuse his actions so as to absolve
him of criminal responsibility for engaging in conduct which otherwise constitutes a
crime. ... Such a defense would consist of facts which exonerate the defendant and do
not simply disprove an element of the offense. ... This Court has long held that, if the
alleged defensive theory merely negates an element of the offense, then no affirmative
charge must be given.... The confusion perhaps lies in this Court's failure to define the
term "defense" and its ambiguous use of the terms "defensive theory or defensive
issue."

Id. at 81 (emphasis in original; citations omitted). In Willis, this Court stated that "the Sanders Court
spoke too generally in deciding that all defenses were in the nature of confession and avoidance. But
having disavowed this language from Sanders and determining that in some circumstances the
defendant will be entitled to defensive instructions although he has not admitted the crime," 790 S.W.2d
at 314, a defensive theory of "accidental injury" or "no intent to injure" in an assault prosecution clearly
disputes the elements of the offense. Such a defensive theory does not necessarily negate or prohibit an
alternative theory of self-defense, but it does not necessarily invoke such a theory either.

34. 991 S.W.2d 835 (Tex. Crim. App. 1999). 
35. Young v. State, 991 S.W.2d 835, 836 (Tex. Crim. App. 1999). 
36. Young, 991 S.W.2d at 839.
37. Id. 
38. The pertinent testimony was:

State: When you saw the defendant that evening did he have any cuts, bruises on him? Was there any
evidence that he had been physically attacked?

A: No, ma'am.

State: Did you have any reason to think that he had been attacked?

A: No, ma'am.

State: Was it your opinion based on your training and experience that he had not been attacked?

A: Yes, ma'am.
39. Tex. R. Evid. 704. See, e.g., Fairow v. State, 943 S.W.2d 895, 897 n.5 (Tex. Crim. App.
1997) (noting that "it is no longer permissible to exclude opinion testimony" simply because it embraces
an ultimate issue); Johnson v. State 970 S.W.2d 716, 720 (Tex. App.-Beaumont,1998, no pet.)
(noting that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable
because it embraces an ultimate issue to be decided by the trier of fact").
40. Texas Rule of Evidence 701 provides: 

 If the witness is not testifying as an expert, the witnesses' testimony in the form
of opinions or inferences is limited to those opinions or inferences which are (a)
rationally based on the perception of the witness and (b) helpful to a clear
understanding of the witness' testimony or the determination of a fact in issue. 
41. See, e.g., Fairow, 943 S.W.2d at 898-99 (police officer may testify to his opinion
concerning an individual's mental state); Reece v. State, 878 S.W.2d, 320, 325 (Tex. App.-Houston
[1st Dist.] 1994, no pet.) (police officer may testify based on his training and experience, that the
actions he observed were consistent with someone selling drugs); Austin v. State, 794 S.W.2d 408,
410-11 (Tex. App.--Austin 1990, pet. ref'd) ( police officer allowed to testify that, based on his
personal experience, it was his opinion that "Swedish deep muscle rub" was a code for prostitution);
Williams v. State, 826 S.W.2d 783, 785 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd) (police
officer could testify, as either a lay witness or an expert, that he interpreted the defendant's actions to
be a drug transaction).