**Opinion issued October 10, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00084-CR

————————————

**VICTOR ANTHONY CHARLES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

———

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1258695**

———

**MEMORANDUM OPINION ON REHEARING**[*]

---

[*] We originally issued our opinion in this appeal on August 22, 2013. Appellant Victor Anthony Charles has moved for rehearing en banc. We withdraw our previous opinion, vacate our judgment, and issue this opinion and the related judgment in their stead.

A jury convicted appellant Victor Anthony Charles of unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04(a) (West 2011). After Charles pleaded true to allegations in two enhancement paragraphs, the trial court assessed punishment at 35 years in prison. On appeal, Charles argues that he received ineffective assistance of counsel because his trial counsel allowed evidence of his prior convictions to be admitted before the jury, and trial counsel failed to introduce evidence of the prior convictions of an important witness for the State. We affirm.

## Background

After an evening watching television and drinking beer with a neighbor, Gwendolyn Sanders saw her 20-year-old daughter come into the house. Her daughter was dating 45-year-old Victor Charles, who had given her a ride home from work. When Sanders went outside a few minutes later, she saw Charles still sitting in his truck in her driveway. She approached Charles with a stick in her hand and knocked on the outside of the truck. She wanted to tell Charles that she did not like that he was dating her daughter because he was too old for her, and she believed that he used illegal drugs.

Charles testified that in addition to the stick, Sanders had a pistol in the waistband of her pants when she approached the truck. The daughter testified in

2

support of this version of events, saying that she had seen a gun on her mother's kitchen table when she had come inside earlier. Sanders denied ever having a gun.

After Sanders knocked on the truck, Charles got out and began to fight with her over the stick. He took the stick away from her. He testified that he also seized the pistol and threw it into his truck. Christine Jones, the neighbor with whom Sanders had been watching television, then came outside and saw Charles hit Sanders with the stick, leaving a welt on her leg. She saw Charles had a gun in his hand. Sanders fell down after the struggle.

A man who knew Charles from the neighborhood was driving down the street at the time of the altercation. He testified that Sanders had a gun when she approached Charles, and he saw the two struggling.

About three minutes later, the police arrived at the house. Charles was driving his truck out of the driveway. The police ordered him out of his truck and took him into custody. When they searched him, they found in his pockets a knife and a magazine loaded with ammunition. A pistol was found on his passenger seat. Sanders was taken to the hospital for a leg injury.

Charles was charged with possession of a firearm by a felon. Before trial, the State gave notice of its intention to use evidence of Charles's prior convictions and extraneous offenses. Charles had been convicted in 1983 on felony counts of sexual abuse, auto theft, and burglary, and he was sentenced to four years in

prison. He was also convicted on two subsequent counts of felony auto theft: in 1988, for which he was sentenced to 12 years in prison, and in 1990, for which he sentenced to 17 years in prison. In exchange for the State's agreement not to identify the prior offense which made Charles a felon for purposes of the pending charge, he stipulated that he had been convicted of the felony offense of auto theft on December 14, 1990, and that he was sentenced to imprisonment for 17 years.

Two days before the case was set for trial, Charles filed a motion in limine with respect to "[a]ny extraneous offense allegedly committed by the Defendant." Charles also filed a "motion to include defense of necessity" in which he advised the court that he would raise such a defense. *See* TEX. PENAL CODE ANN. § 9.22 (West 2011).

Charles was arraigned on Thursday, January 20, 2011, and a jury was selected the next day. During the voir dire, counsel for the State informed the venire panel that the parties had stipulated the fact that Charles had been convicted of a felony. A prospective juror asked, "Does that mean that we will never know what he was convicted of before?" The prosecutor answered that question "yes," but the trial judge then interjected:

> THE COURT: No, no, no. Maybe, maybe not. It kind of just depends. But the bottom line is being that these two have already agreed that from this point forward, that element has been proven, that he's been convicted of a felony, that she doesn't have to bring somebody in now to say that he was ever convicted of a felony. But,

4

yes, you'll find out. You know when you'll find out? When this trial is over. I'll tell you.

PROSPECTIVE JUROR: Right. But we won't before?

THE COURT: Right. Well, you may, under certain circumstances. But just assume that you won't.

PROSPECTIVE JUROR: Assume we won't.

THE COURT: What you need to know and what essentially has been proved outside already your presence is that he has been convicted of a felony. The specifics you will find out maybe during trial, maybe when the trial is over. But that element has been proved already.

After the jury was selected, the trial recessed for the weekend. The trial resumed on Monday, January 24. That morning, the State filed its own motion in limine regarding the criminal history of its complaining witness, Sanders, which consisted of three misdemeanor convictions, including a 1997 theft conviction. The State argued pursuant to Rule 609(b) that although theft is a crime of moral turpitude, it should not be admitted because it had occurred more than ten years previously. Charles's counsel responded to this argument that the State's position "puts things at a disadvantage for the Defendant when . . . his credibility is going to be evaluated particularly on behalf of his criminal record . . . ." While counsel generally contended that it would be unfair for the jury to learn of Charles's criminal history but not that of the State's witness, he did not specifically mention the pending motion in limine, ask for a ruling on that motion, or otherwise argue

5

that Rule 609(b) should also operate to preclude evidence of one or more of Charles's own prior convictions. The court orally granted the State's motion, and the trial went forward.

The State presented its entire case in the morning, and then Charles began to present his defense. When Charles was called to testify on his own behalf, the trial judge excused the jury for its lunch break. Before the jury returned from lunch, the trial judge admonished Charles about the potential consequences of his decision to testify:

> THE COURT: . . . . Mr. Charles, I understand that you may testify. And—but before you do, I just want to bring up and—as I have before, about the dangers of you testifying because of your past criminal offenses. And I just want to make sure that you understand that, that if you testify that the State's going to be able to impeach you or ask you questions about all of your prior convictions. Do you understand that?
>
> For instance, if you get up there and testify. She's going to be able to ask you whether or not you were previously convicted of auto theft out of the 232nd District Court in Cause No. 0478516. And that you were convicted on December the 14th of 1990.
>
> She's going to be able to ask you if you were also convicted of another auto theft in Cause No. 0495636 out of the 338th District Court and that you were convicted on that date, on December the 7th of '88, 1998, that is. She's going to be able to ask you about two cases of sexual abuse, about whether or not you're the same person that was convicted in Cause No. 0385342 and 0384051 out of the 184th District Court where you were convicted on August the 24th of 1983. And then, again, she'll be able to ask you about another prior offense of burglary. I don't know if that's burglary of a habitation or burglary of what, but in Cause No. 0370857, Harris County out of the 184th District Court back on August the 24th of 1983.

6

I bring this all up to you because if you get up there to testify, then the jury is going to know that you have been previously convicted of all those offenses. My concern is that the jury then perhaps could think that if you committed those prior felonies and were convicted of those felonies that you may very well be guilty of this offense. Does that make sense to you?

THE DEFENDANT: Yes, your Honor, it does.

THE COURT: And, so, I just want to make sure that you're informed that if you take the stand, that's the danger. It's totally your decision on whether you take it or not. But, again, if you take the stand, then all those priors are going to come out. Okay?

Now, look, I know that your lawyer has informed the Court that— essentially that it was based on necessity that you were in possession of a firearm. Well, the only way you can get that defense, in other words, the only way the jury can consider whether or not that defense is applicable in this case is if you do testify. But if you testify to get that defense, I'm just saying they're going to hear about all those priors. And if they hear about all these priors, my concern is that they may possibly, although I admonished them that they have to consider all the evidence before they decide whether you're guilty or not, they may very well decide or be thinking that you must be guilty of this offense based on your past. I don't know how to say it any more clear. Do you understand all that?

THE DEFENDANT: Yes, ma'am, I do. May I confer with counsel for a minute, please?

THE COURT: Yeah, of course. I just want you to—I just want to make sure that if we go forward, that that's the case and that—I'm sure [defense counsel] explained that to you, but sometimes it helps to make sure that the explanation is really clear and a Judge made it clearer. So, why don't you talk to your lawyer and then we'll get going as soon as I finish with this other lawyer.

[DEFENSE COUNSEL]: Thank you, your Honor.

7

The trial resumed, and defense counsel then proceeded to begin the direct examination of Charles by inviting him "get all the uglies on the table right up front," thereby eliciting testimony about the four prior felony convictions. Charles stated: "I had [been convicted] of burglary of a building; two counts of sexual abuse; in 1989, unauthorized use of a motor vehicle." On cross examination, the State asked Charles to confirm that he had been convicted of those crimes. After he again affirmed that he had, the State did not inquire further about his past convictions or ever refer to them again. The next day, Charles submitted a stipulation listing the five prior convictions he had been asked about on the stand.

The jury found Charles guilty of the charged offense of unlawful possession of a firearm by a felon. The trial court subsequently sentenced him to imprisonment for 35 years. Charles then filed this timely appeal.

## Analysis

Charles contends that his trial counsel rendered ineffective assistance in two ways. First, he alleges that his trial counsel should not have elicited evidence of his prior remote convictions. Second, he argues that his counsel should have obtained admission of the evidence of Sanders's prior convictions. He asserts that these failures harmed him to such an extent as to alter the outcome of the trial, specifically that his necessity defense was discounted and the jury found him guilty.

8

To prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence that (1) his trial counsel made errors so serious that counsel was not functioning as counsel under the Constitution and (2) a reasonable probability exists that, but for trial counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052 (1984). Under the first prong, the appellant must show that his counsel's performance fell below an objective standard of reasonableness, which does not require showing that counsel's representation was without error. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Because there "are countless ways to provide effective assistance in any given case," we must be highly deferential and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim. App. 2011) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052. Under the second prong requiring a showing of harm, a "reasonable probability" of prejudice is "one sufficient to undermine confidence in the outcome." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). It is not sufficient to show "that the errors had some conceivable effect on the outcome of the proceeding," rather the appellant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Martinez*, 330 S.W.3d at 901.

The two prongs of the ineffective assistance of counsel test need not be addressed in any particular order; when "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052.

## I.     Charles's prior convictions

Charles contends that his trial counsel erred by eliciting testimony about his prior convictions without first preserving error as to the State's proposed use of those convictions as impeachment evidence. The decision had been made to have Charles testify in order to present his necessity justification for possessing the pistol. *See Anderson v. State*, 11 S.W.3d 369, 372 (Tex. App.—Houston [1st Dist.]

10

2000, pet. ref'd) ("To raise the issue of self-defense, appellant must admit the committed offense and then offer self-defense as justification."). Although he presented a motion in limine, defense counsel did not obtain a ruling on the motion or otherwise object to the introduction of evidence of Charles's prior convictions, thereby failing to preserve the issue for appellate review. *See McNeil v. State*, 398 S.W.3d 747, 755 n.1 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("a motion in limine does not preserve error"). Charles argues that his convictions in 1983 were too remote and prejudicial to be admissible for impeachment purposes, and therefore his attorney erred in failing to exclude their admission. *See* TEX. R. EVID. 609.

We need not resolve whether the trial court would have acted within its discretion to admit the evidence of Charles's prior convictions over a timely objection, as we conclude that there has been no showing that Charles was harmed under the second prong of the *Strickland* test.

Charles asserts generally that the introduction of a prior sexual conviction causes harm requiring reversal. To show prejudice when challenging a conviction, an appellant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 104 S. Ct. 2052. We consider the totality of the evidence, proceeding on the assumption that the decisionmaker is reasonably,

11

consciously, and impartially applying the standards that govern the decision. *Id.* Proving prejudice for purposes of an ineffective assistance claim is more difficult than proving harm under the rules of appellate procedure. *Martinez*, 330 S.W.3d at 903.

The State established that Charles previously had been convicted of a felony and that he possessed a firearm at a location other than where he lived. *See* TEX. PENAL CODE ANN. § 46.04(a). Charles did not dispute that the State made this prima facie showing. Instead, he offered the justification of necessity, presenting evidence that he only possessed the firearm because he reasonably believed it was necessary to take the firearm from Sanders to avoid imminent harm. *See* TEX. PENAL CODE ANN. § 9.22. We ask then whether there is a reasonable probability that the jury would have had a reasonable doubt regarding Charles's guilt even without the admission of the allegedly inadmissible evidence of Charles's prior convictions. *See Smith v. State*, 355 S.W.3d 138, 144–45 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (noting that the State bears the burden to prove its overall case beyond a reasonable doubt once the defendant produces some evidence of a defensive theory).

To determine whether counsel's deficiency resulted in prejudice to the appellant, we look to the weight, nature, and focus of the evidence presented, the role that evidence played in the State's closing argument, and the relative role the

12

allegedly improperly admitted evidence played in the outcome of the trial. *Ex parte Nailor*, 105 S.W.3d 272, 280 (Tex. App.—Houston [14th Dist.] 2003), *aff'd*, 149 S.W.3d 125 (Tex. Crim. App. 2004).

In its totality and even without consideration of the extraneous offense evidence, the evidence against Charles is strong and supports the guilty verdict, including rejection of his necessity defense. Charles's account that he had grabbed the pistol from Sanders and threw it into the truck was facially implausible. He testified that he obtained the gun while struggling with Sanders next to his truck with the door open, then he got the gun and threw it into his truck. In an attempt to explain how the pistol's magazine was found in his pocket with his knife, rather than with the gun inside the truck, Charles testified that he "was also able to get [the magazine] after he threw the gun," which had somehow been removed from the gun, but he was "unable to get back" to his truck and so he stuck it in his pocket.

The evidence presented by other witnesses also supports the jury's verdict. Sanders testified unequivocally that she did not own any guns. Jones, the neighbor and friend of Sanders, testified that Charles had the pistol during the scuffle, not Sanders, and he used it to threaten her. The two witnesses who testified that Sanders was the true owner of the pistol did not present strong testimony. The State impeached one, Charles's acquaintance, with his prior felony convictions.

13

The State also questioned whether someone who just happened to be driving down the street, as Charles's friend said he was, would have observed the details of who possessed the pistol and how the struggle over the stick occurred. The State impeached the other witness, Sanders's daughter, with evidence that she had given a different story to the police on the night of the incident than the story she told at trial.

The role of Charles's earlier convictions did not permeate the trial. Instead, the trial focused on the events of the night when Charles was found with the gun and the plausibility of his story about how he had taken the gun from Sanders. His attorney and the State asked Charles to acknowledge the prior convictions, but they did not attempt to divulge any details about the nature of the crimes beyond the types of offenses. The other testimony and arguments at trial mentioned his prior convictions but did not mention the details. The State focused its attention at closing argument on the implausibility of Charles's story of how he obtained the gun.

Considering the totality of the evidence, we cannot conclude that the admission of his prior convictions, even if they were inadmissible under the Rules of Evidence, undermines our confidence in the outcome of his trial. Charles has not shown by a preponderance of the evidence that there is a reasonable probability

of a different result even if his lawyer had not elicited the testimony. Accordingly, he has not proven that he was prejudiced by his trial counsel's alleged error.

## II. Sanders's prior convictions

In his second issue, Charles argues that his trial counsel erred in failing to obtain admission of Sanders's prior convictions as impeachment evidence. The State presented a motion in limine seeking to exclude Sanders's prior convictions for failure to present identification to a police officer and misdemeanor theft. The trial court granted the motion over the objection of Charles's trial counsel, who argued that these were crimes of moral turpitude, which are admissible under Rule 609, and that it would be constitutionally unfair to his client not to admit them.

The standard for ineffective assistance is whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. An isolated error does not render counsel's performance ineffective. *Robertson*, 187 S.W.3d at 483. There is a strong presumption that the decisions of counsel during trial fell within the wide range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 814. We will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). To succeed in showing his counsel's performance was deficient, Charles

15

"must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms." *Bone*, 77 S.W.3d at 833.

Charles argues that his counsel "could have made a valid objection to the State's motion in limine." He claims that a conviction for failure to present identification to a police officer is a crime of moral turpitude, and so it was admissible under rule 609 and also would have allowed the prior theft conviction to be admitted under the tacking doctrine.

However, failure to present identification is not necessarily a crime of moral turpitude. *See Lester v. State*, 366 S.W.3d 214, 215 (Tex. App.—Waco 2011, pet. ref'd). Failure to identify can involve either refusing to give identification information or giving false or fictitious information. TEX. PENAL CODE ANN. § 38.02(a), (b) (West 2011). Only the latter is deceptive and a crime of moral turpitude. *See Lape v. State*, 893 S.W.2d 949, 958 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). Charles presents no evidence that Sanders's prior conviction involved deception. Thus, he does not show that his trial counsel erred in the objection he offered to the trial court, let alone that his trial counsel's argument was "so outrageous that no competent attorney would have engaged in it." *Garcia*, 57 S.W.3d at 440.

16

Because he does not demonstrate that his counsel erred, Charles does not present evidence that his trial counsel's conduct fell below this standard. *See Bone*, 77 S.W.3d at 833.

## Conclusion

Charles did not satisfy the standard for obtaining a reversal of his conviction based on ineffective assistance of counsel. Accordingly, we affirm.


                                        Michael Massengale
                                        Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).