

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NOS.  2-08-104-CR
2-08-105-CR
2-08-106-CR
2-08-107-CR
2-08-108-CR

RADFORD ROY PANNELL                                        APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Radford Roy Pannell appeals his five fifteen-year sentences for theft under $1,500 and evading arrest or detention using a vehicle, alleging in one point that he received ineffective assistance of counsel at punishment.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## Background Facts

Appellant entered an open plea of guilty to four counts of theft against four separate people; each count was enhanced with two prior theft convictions, a prior conviction for robbery causing bodily injury, and a prior conviction for forgery. Appellant also entered an open plea of guilty to evading arrest, enhanced by a prior conviction for robbery causing bodily injury and a prior conviction for forgery. The trial court ordered a presentence investigation report (PSI) and set a hearing on punishment.

At punishment, the State offered evidence that while appellant was on bond for the offenses to which he pled guilty, appellant wrote fifteen checks to a store owner in the amount of around $6,000 for cigarettes. The owner contacted appellant's bank and discovered that appellant did not have sufficient funds to cover the checks. When appellant later returned to the same store, the owner locked the door and told him she knew he did not have the money to cover the checks. He asked her what she wanted, and then he pushed her so hard she fell to the ground. After she fell, he took her keys. As appellant was going out the door, the owner activated an alarm to call the police, grabbed a can of mace, and tried to spray appellant with it. He nevertheless was able to flee outside. The owner tried to follow appellant, but he pulled her hand, making her fall down a second time, and drove off. The owner testified

2

that she was afraid she would lose her store because she could not repay loans she had to take out to cover her losses from appellant's bad checks.

When appellant committed this extraneous conduct, he was out on bond for the offenses to which he had pled guilty and was awaiting the preparation of a PSI and the assessment of punishment. Appellant was in jail when the detective investigating the extraneous offenses interviewed him; appellant admitted to the detective that he knew the checks were bad when he wrote them.

Appellant testified, acknowledging that he committed the offenses of theft by check, but he contended that he wanted to make restitution to the store owner and all the other victims. According to appellant, he had a drug problem that caused him to commit all of these crimes. Appellant testified that he was finally tired of hurting people and that he wished to make amends; as a result, he offered to submit to drug treatment and make restitution.

The defense also called two of appellant's friends and his wife. They all testified that appellant was a drug addict but that he was a good candidate for community supervision and would be able to make restitution to his victims. Defense counsel stressed appellant's drug problems and willingness to make restitution and urged the trial court to grant appellant community supervision; however, the State stressed appellant's repeated criminal convictions spanning

3

at least twenty-five years and recommended the maximum sentence, twenty years.

The trial court sentenced appellant to fifteen years in each case. On the record, the court listed appellant's past criminal convictions in Tarrant County and noted that he had been in drug treatment twice before, that in one year he had incurred restitution costs of $60,000, and that he had committed theft by check while on bond for the same type of crime. Before sentencing appellant, the judge specifically stated,

> And it's just difficult for me to understand, sir, why is this happening to someone with your education, with your ability, with your degree of articulateness, with the people that you have in the courtroom who are supporting you and will support you. And I just cannot give you a chance based on your criminal history and based on what you've been willing to do even when I've had you out on my bond. I just can't take a chance on you, sir, and I won't.

In a single point, appellant contends that his attorney was ineffective by failing to discover, investigate, and prepare a defense regarding the thefts by check that he committed while out on bond. He bases this allegation on counsel's objections at the beginning of punishment to the State's witnesses to the cigarette thefts by check, to which counsel stated that he had not received notice of the unfiled case and objected to the relevance of it to "the cases he's pled guilty to." Counsel repeatedly objected to the extraneous offenses' relevance, later stating specifically that "[i]t's a case that I'm not

4

familiar with, hasn't been filed, and I would – certainly wouldn't be representing him on this case. I haven't been appointed on it or anything." According to appellant, "there is a reasonable probability that the trial court would have at least backed off to some degree" on the fifteen year sentences "had counsel made an effort to discover, investigate, and prepare to defend against the extraneous offense presented at punishment."

## Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms

5

at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for

6

counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

**Analysis**

Here, there is no motion for new trial record showing the extent of counsel's knowledge or lack thereof regarding the theft by check extraneous offenses. However, counsel's initial objection seems to indicate that he was made aware of the extraneous conduct evidence the morning before the hearing:

> Your Honor, I object to these witnesses being called. As we discussed, it's apparent in the case that we did not receive any notice about it until today's hearing, and I note this is a case that has not been filed - - there was no formal notice, I should say. The prosecution did discuss it, but there's been no case filed on these charges, so, therefore, I would object to the relevance to this case.

The State responded,

> And, Your Honor, for the record, the State brought it up with defense counsel previous to Mr. Hernandez, as soon as the State received notice that these cases had - - were being developed by the police, and that was previous attorney, Jerry Wood,[2] and as

---

[2] Wood's motion to withdraw, dated about a month before sentencing, notes that appellant had "since been charged with a new offense."

7

soon as we had a copy of the offense report ready, and it's case number 080019825, that was provided. It is on ECFS, and it is part of the State's open file.

Appellant's counsel then stated, "I was provided the checks this morning and was not aware that these had been put on ECFS, Your Honor."

Regardless, counsel was able to elicit on cross-examination of the investigating officer for the theft by check offenses that appellant had offered to provide restitution, that he gave the officer the name of someone who would contact the officer regarding restitution, that appellant was "forthcoming with information and . . . appeared to want to be very helpful" with the case, that appellant was calm and did not make excuses for his actions, and that appellant was atypical for someone with his criminal history because "[m]ost people with the type criminal history that he has that [the officer] ha[s] dealt with . . . usually make up excuses for what they've done and are not very forthcoming with information." He also elicited testimony from the officer that drug addicts can reform and become contributing members of society.

On cross-examination of the victim of the extraneous theft by check offenses, counsel elicited testimony that although she was scared of appellant, he never hit her. Also, he elicited testimony that she would rather be paid back through having the court order restitution, which she understood would be impossible if appellant were sent to prison. Thus, counsel was able to elicit

8

testimony favorable to his defensive theories—that appellant deserved a second chance due to his drug addiction and willingness to make restitution—from both of the theft by check witnesses.

In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to "counsel's perspective at the time" investigative decisions are made. *Rompilla v. Beard*, 545 U.S. 374, 381, 125 S. Ct. 2456, 2462 (2005); *Aldrich v. State*, No. 02-05-00303-CR, 2008 WL 5057647, at *16 (Tex. App.—Fort Worth Nov. 26, 2008, no pet. h.) (en banc). Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *Strickland*, 466 U.S. at 690–91, 104 S. Ct. at 2066; *Aldrich*, 2008 WL 5057647, at *16; *Hale v. State*, 140 S.W.3d 381, 393 (Tex. App.—Fort Worth 2004, pet. ref'd). In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 690–91, 104 S. Ct. at 2066; *Aldrich*, 2008 WL 5057647, at *16.

Here, counsel was appointed a month before the hearing at which the trial court assessed appellant's punishment. He did not request a continuance upon

9

learning of the extraneous offense evidence. But he did object to the admission of the evidence and was able to elicit testimony favorable to his defensive theories in the case from the witnesses. Further, there is no evidence as to the reasonableness of counsel's decision to investigate to the extent he did, or did not. Thus, based on this undeveloped record, we cannot say that counsel was deficient with regard to investigating the extraneous theft by check conduct. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002); *Salinas v. State*, 274 S.W.3d 256, 261–62 (Tex. App.—Houston [14th Dist.] 2008, pet. filed); *Rodriguez v. State*, 103 S.W.3d 460, 461–62 (Tex. App.—San Antonio 2002, pet. ref'd), *cert. denied*, 541 U.S. 1044 (2004).

Moreover, even assuming that counsel's performance fell below an objective standard of reasonableness, appellant has not shown that but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. Appellant's counsel was able to elicit testimony favorable to his defensive theories, and appellant has not alleged anything that counsel could have done differently or what additional investigation would have uncovered that would have changed the trial court's assessment of punishment. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) ("To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have

10

changed the outcome of the trial."); *Ex parte Nailor*, 105 S.W.3d 272, 279 (Tex. App.—Houston [14th Dist.] 2003), *aff'd*, 149 S.W.3d 125 (Tex. Crim. App. 2004); *Haight v. State*, Nos. 02-05-00163–65-CR, 2007 WL 176487, at *4 (Tex. App.—Fort Worth Jan. 25, 2007, pet. ref'd) (mem. op., not designated for publication).  The trial court specifically stated on the record that its decision was based on appellant's past history, not just his engaging in the theft by check offenses while out on bond.  Based on appellant's admitted drug addiction and over twenty-year history of committing robbery and theft, the trial court could have concluded that his offer to make restitution was too little, too late.  Based on this record, we cannot conclude that appellant has shown that the outcome of his trial would have been different but for his counsel's performance.

We overrule appellant's sole point and affirm the trial court's judgments.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 23, 2009

11