

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00157-CR

_____


DEVIN BUSSEY, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1822640


Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

A Tarrant County[1] jury convicted Devin Bussey of assault of a family or household member with a previous conviction, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A). The trial court found the enhancement true and sentenced Bussey to fifteen years' imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(a) (Supp.). Bussey appeals, arguing that: (1) the trial court admitted hearsay on multiple occasions during guilt/innocence; (2) the trial court admitted irrelevant evidence; (3) the trial court allowed witnesses to speculate; (4) the trial court admitted bad-act evidence without proper notice; (5) the trial court violated his Fifth Amendment right to silence; (6) the trial court admitted the 9-1-1 call in violation of the Sixth Amendment Confrontation Clause; (7) the evidence was insufficient to support his conviction; (8) the trial court admitted hearsay during punishment; (9) the trial court allowed speculation during punishment; and (10) the cumulative effect of these errors denied him a fair trial. We affirm the trial court's judgment.

## I. Applicable Facts

A.D.[2] and Bussey were involved in a domestic relationship that spanned several years, and they had a child together. The State alleged in its indictment that the offense at issue

---

[1]This appeal was transferred to this Court from the Second Court of Appeals pursuant to a Texas Supreme Court docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). Accordingly, we apply the precedent of the Second Court of Appeals in deciding this case to the extent that it conflicts with our own. *See* TEX. R. APP. P. 41.3.

[2]We use initials for the adult complainant and pseudonyms for friends and family members in this case out of respect for her privacy and that of her minor child. *See*, *e.g.*, *Reed v. State*, 680 S.W.3d 620, 622 n.1 (Tex. Crim. App. 2023) (adult victim identified by initials); *Kingsbury v. State*, 625 S.W.3d 686, 689 n.1 (Tex. App.—Fort Worth 2021, no pet.) ("We use a pseudonym to protect the complainant's privacy."); *see* TEX. CONST. art. I, § 30(a)(1) (granting a "crime victim . . . the right to be treated with fairness and with respect for the victim's dignity

occurred on September 30, 2023. The State also alleged in its indictment that Bussey was a repeat offender and that he was already a convicted felon as of the date of the September 2023 offense.

Before the offense now at issue, on October 10, 2019, Bussey assaulted and attempted to sexually assault A.D. while she was pregnant. In addition to offering judicial records of that incident, the State offered testimony of Detective Jason Montoya, with the Fort Worth Police Department, and of Mary, A.D.'s aunt. Bussey was initially placed on deferred adjudication for those offenses.

The State offered evidence regarding an event that occurred in March 2021, during the time that Bussey was on deferred adjudication. Mary testified that she got a call in the middle of the night from A.D. Mary said that A.D. told her that Bussey had beaten her and locked her in a closet. After the call, A.D came to Mary's house. The State introduced, without objection, photographs depicting a bruised and bloody A.D. Mary testified that the photographs truly and accurately showed A.D.'s condition that night. Detective Alex Nilsen, with the Arlington Police Department family violence unit, investigated the March 2021 incident in which A.D. alleged that Bussey choked her. That incident led to arrest warrants for Bussey. It does not appear, though, that that incident led to criminal prosecution. Instead, Nilsen testified to her years of experience working on domestic violence cases and to the reasons why abuse victims sometimes make a complaint but then decline to assist in the prosecution. Nilsen testified to ways abusers

---

and privacy throughout the criminal justice process"); *see also* TEX. CODE CRIM. PROC. ANN. arts. 58.101(1), 58.102(a) (Supp.) (victim of a reportable offense may elect to use a pseudonym by completing a prescribed pseudonym form).

3

can use children to control their victims. Neither Mary nor Nilsen cross-referenced the other's testimony, so it is a matter of inference whether their testimony was about the same incident or different incidents.

On September 17, 2021, Bussey's deferred adjudication community supervision was revoked, and he was convicted and sentenced to two years' incarceration. As a result of that conviction, Bussey was placed under a duty to register as a sex offender.

Records show that Bussey was released from prison in January 2023. During the guilt-innocence phase, the jury did not hear an exact date of Bussey's release, but they knew he had been imprisoned and released. Bussey's counsel stated, "Yes, they've had a relationship for about seven years, and it has been hot and cold. . . . As soon as [Bussey] got out of prison, they all came back together again." That "all" includes Bussey, A.D., and their child. Bussey, through counsel, set out a theory of the case: regardless of what had happened before in their "hot and cold" relationship, this time "[s]he started violence with him. She[] hit him first."

Mary testified that she saw injuries on A.D. "many times." Mary testified that she never saw Bussey beat A.D. She did, however, observe the "dynamics" of Bussey and A.D.'s relationship. It was, in Mary's estimation, "volatile, toxic, and not healthy." Mary testified, without objection, that there was a time when Bussey spoke to her in the yard while A.D. was in the house. Mary said that Bussey promised her that he would treat A.D. better, "he swore to [Mary] he would never do th[at] again, he wanted to be a good father, a good partner, and that he would never hurt [A.D.] anymore." Mary stated that Bussey said that was sometime in 2020. Mary testified that when Bussey made that pledge, she wanted to believe him, but she came to

4

the conclusion that he would never change. Mary testified to what Bussey did when he and A.D. were apart, "[t]exting, calling, coming to the house. He kicked the door, punched the wall." Further, Mary stated that Bussey used the child to get back together with A.D. She said he used the child "[e]very time."

In the early morning hours of September 30, 2023, A.D. called 9-1-1 and reported that Bussey had injured her after she threatened to call police to remove him from her home. Bussey broke her cell phone and left the residence on foot before officers arrived. Officer V. Smith, with the Fort Worth Police Department, responded and observed injuries to A.D.'s chin and knee. Detective B. Wyrick, with the Fort Worth Police Department's domestic violence unit, stated that A.D.'s injuries were "consistent with someone that ha[d] been slapped or possibly tackled[.]" Wyrick believed that he "had probable cause that bodily injury had occurred" and obtained an arrest warrant for Bussey for assault causing bodily injury with a previous conviction.

A.D. was present at trial under subpoena, but in a hearing outside of the presence of the jury, she invoked her Fifth Amendment right against self-incrimination. *See* U.S. CONST. amend. V.

The State offered evidence bearing on the relationship between Bussey and A.D., via testimony about events subsequent to September 30, 2023, but before trial (which began on June 24, 2025). A.D.'s best friend, Kami, testified that on May 27, 2025, Bussey followed her and A.D. out of a restaurant, stood between A.D. and her open car door, and prevented A.D. from leaving. Mary testified that she got a call in the middle of the night, and A.D. told her that

5

Bussey had beaten her and locked her in a closet. Mary said A.D. also stated that she needed to go to the hospital. Mary testified that on another occasion, she saw A.D. in the hospital after Bussey raped and beat her.

The jury returned a guilty verdict, and the trial court assessed punishment at fifteen years' imprisonment.

## II.     The Trial Court Did Not Abuse its Discretion by Overruling Hearsay Objections

In his first and eighth issues, Bussey argues that the trial court erroneously admitted hearsay on multiple occasions during both phases of trial.

### A.     Standard of Review

"An appellate court reviews a trial judge's determination on admissibility of evidence for an abuse of discretion." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). "Considering that the trial court has the best view of the evidence, an appellate court will uphold a trial court's ruling on admissibility so long as it is within the 'zone of reasonable disagreement.'" *Id.* (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g))); *see Eichelberger v. State*, 232 S.W.3d 225, 226–27 (Tex. App.—Fort Worth 2007, pet. ref'd).

"An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case." *Bluntson v. State*, 728 S.W.3d 87, 108 (Tex. Crim. App. 2025), *cert. denied*, No. 25-6476, 2026 WL 795116 (U.S. Mar. 23, 2026) (mem. op.) (citing *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016)). Opening statements, though not evidence, can assist the trial court in its assessment of what evidence to admit and when to admit it. *Dabney v. State*, 492 S.W.3d

6

309, 317 (Tex. Crim. App. 2016) (citing *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008)) ("Because Appellant presented his defensive theory in opening statements, the State could use extraneous-offense evidence to rebut this theory in its case-in-chief rather than waiting until the defense rested.").

### B.      Harm and Preservation

"Ordinarily, the erroneous admission of evidence is non-constitutional error." *Bluntson*, 728 S.W.3d at 113. "Non-constitutional error must be disregarded unless it affects the defendant's substantial rights." *Id.* (citing TEX. R. APP. P. 44.2(b)). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))). "If we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Id.* (citing *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018)). "In making this determination, we consider:  the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence supporting the verdict; and whether the State emphasized the error." *Id.* (citing *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021)).

When a point is established via evidence admitted without objection, that could be viewed as curing any error:  "An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex.

Crim. App. 2004) (alteration in original) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)); *see Redmond v. State*, 629 S.W.3d 534, 547 (Tex. App.—Fort Worth 2021, pet. ref'd) ("Officer Harvey's brief, five-sentence summary not only mirrored Jane's trial testimony but was corroborated by other, unchallenged testimony and evidence as well."). It could also be viewed as failing to preserve error: "Generally, to preserve error in the admission of evidence, a party must make a proper objection, get a ruling on that objection, and continue to object each time the allegedly inadmissible evidence—or other evidence proving the same underlying fact—is offered." *Redmond*, 629 S.W.3d at 547 (citing *Lane*, 151 S.W.3d at 193).

### C. Applicable Law

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial [or hearing], offered in evidence to prove the truth of the matter asserted." *Head v. State*, 4 S.W.3d 258, 261–62 (Tex. Crim. App. 2009) (quoting TEX. R. EVID. 801(d)). "[A] party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly." *Id.* at 261 (quoting *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989)). Backdoor hearsay occurs when "'the State's *sole intent* in pursuing [a] line of questioning was to convey to the jury' the contents of the out-of-court statements." *Id.* at 262 (quoting *Schaffer*, 777 S.W.2d at 114). When backdoor hearsay is raised, the issue is whether there "is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom." *Schaffer*, 777 S.W.2d at 114; *Head*, 4 S.W.3d at 261 (quoting *Schaffer*, 777 S.W.2d at 114). Inescapable "turns on how strongly the content of the out-of-court statement can be inferred from the context." *Head*, 4 S.W.3d at 261.

8

#### D. Guilt-Innocence Phase

In his first issue, Bussey contends that the trial court abused its discretion by admitting hearsay during the guilt-innocence phase. Bussey asserts that the following are instances of the State attempting, directly and indirectly, to introduce the statements of A.D., even though A.D. did not testify before the jury. Bussey's first point complains of the following six sub-points:

- Smith's testimony that during his investigation he "learn[ed] what the relationship was between" A.D. and Bussey;[3]
- Nilsen's testimony that she "determine[d] the relationship" between Bussey and A.D.;
- Smith's testimony that A.D.'s story was "consistent with her injuries";[4]
- Mary's testimony about what Bussey did to try to get back together with A.D.;
- Mary's testimony regarding the March 2021 incident; and
- A.D.'s statements on the 9-1-1 recording.

We find no abuse of discretion in the trial court's admission of the law enforcement officers' statements regarding the relationship between Bussey and A.D. Bussey's opening statement had put his relationship with A.D. at issue and had described it. Each statement was admissible as non-hearsay explaining the course of the investigation and establishing how Bussey became a suspect. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *Flores v. State*, No. 02-21-00028-CR, 2022 WL 3097287, at *7 (Tex. App.—Fort Worth Aug. 4, 2022, pet. ref'd)

---

[3]Bussey did not preserve error on this objection because this evidence was also introduced later without objection. "'An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.'" *Lane*, 151 S.W.3d at 193 (alteration in original) (quoting *Valle*, 109 S.W.3d at 509). Therefore, Bussey did not preserve this argument for review.

[4]Bussey did not preserve error on this objection because this evidence was also introduced later without objection. *See id.*

(mem. op., not designated for publication)[5] ("Police officers have been allowed to testify to information that might otherwise be considered hearsay in order to explain the course of an investigation or their presence at a crime scene."). Further, the record is replete with unobjected-to evidence regarding the relationship between Bussey and A.D. This includes Mary's assessment of the relationship as "volatile, toxic, and not healthy." This also includes Bussey's pledge to Mary that "he would never hurt [A.D.] *anymore*." (Emphasis added).

We find no abuse of discretion in the trial court's admission of Smith's testimony comparing A.D.'s complaint to her injuries. The "consistent" testimony was independently admissible as a lay opinion rationally based on the substantial experience of Smith's domestic-violence investigation experience. It was based on Smith's personal observation of A.D.'s injuries and does not relay the substance of her out-of-court statements. *See Smith v. State*, No. 02-21-00201-CR & 02-21-00202-CR, 2022 WL 2979182, at *4 (Tex. App.—Fort Worth July 28, 2022, no pet.) (mem. op., not designated for publication) ("[T]he detective's testimony was rationally based on what he perceived, i.e., the bruises depicted in the photo of Complainant's arm and whether the presence of those marks in his experience 'matched up' with a domestic-abuse complainant's rendition of events."). Therefore, the alleged backdoor hearsay did not lead to an inescapable conclusion that the purpose was for hearsay.

We find no abuse of discretion in the admission of Mary's testimony regarding the things Bussey did to get back together with A.D. At a minimum, it was in the zone of reasonable

---

[5]The Fort Worth Court of Appeals has stated that it "consider[s] unpublished opinions with similar facts instructive and cite[s] them in agreement with their guidance as to the application of settled law." *Thetford v. State*, 643 S.W.3d 441, 451 n.19 (Tex. App.—Fort Worth 2022, pet. ref'd) (op. on remand) (quoting *Cain v. State*, 621 S.W.3d 75, 81 n.8 (Tex. App.—Fort Worth 2021, pet. ref'd)).

disagreement whether Mary was asked to testify based on hearsay, and whether the answer she gave was based on hearsay. For a while, Mary lived with A.D. Then, for a while, A.D. lived with Mary. Mary cared for A.D.'s child. In other words, Mary was in a position to observe A.D.'s life in person. The State asked Mary to testify, "from what you have personal knowledge of" about the things she "observed" Bussey do.

We find that Bussey's other guilt-innocence hearsay sub-points are not properly before us. Bussey also challenges two instances of direct hearsay: (1) Mary's testimony that A.D. appeared to still be under stress from the assault A.D. told her about, and (2) A.D.'s 9-1-1 call. To preserve error, a party must make "a timely request, objection, or motion" in the trial court, followed by either a ruling or a refusal to rule by the trial court. TEX. R. APP. P. 33.1(a). To avoid forfeiture, a "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). At trial, Bussey challenged the testimony about stress solely on speculation grounds. In his objection to the 9-1-1 recording, Bussey references "hearsay," but the entire context was about a confrontation clause objection, and the trial court exclusively ruled on the confrontation clause. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Because Bussey's argument in his brief does not comport with the objection made at trial, we overrule his complaint as to these two statements.

We overrule Bussey's first issue.

11

### E. Hearsay at the Punishment Phase

Bussey also challenges alleged hearsay admitted during the punishment phase. He does so via his eighth issue, which we consider out of order to address all hearsay issues together.

As a result of his 2021 conviction regarding the attempted sexual assault of A.D., Bussey had to register as a sex offender. During the punishment phase, Officer Andrew Anderson, with the sex offender registration and tracking unit at the Fort Worth Police Department, testified to establish that Bussey had violated that requirement because Bussey was not living at his registered address. In sum, Anderson testified that he went to Bussey's registered address (a motel), and Bussey was not there. On appeal, Bussey complains that Anderson testified about his use of a videographic database to investigate Bussey's whereabouts even though Anderson was not the custodian of the database. Bussey also complains that Anderson recounted statements of motel employees and of the admission of a screenshot of the motel registration computer showing Bussey's checkout date, which the desk clerk permitted Anderson to take. However, Bussey elicited the contents of the motel employee's statements on cross-examination of Anderson by asking, "[T]he reason you didn't go in [to what had been Bussey's room] is because you didn't try, right?" Anderson replied, "No. [he] was told that [Bussey] was not currently checked into the hotel." The State offered the photograph of the registration computer on redirect, after Bussey asked Anderson, "Did you bring that checkout date with you here today?" Bussey's violation of his sex offender registration requirements was also set out in the pre-sentence investigation report, which was admitted during the punishment phase without objection.

12

We find that error, if any, was harmless.  *See Lane*, 151 S.W.3d at 193; *Redmond*, 629 S.W.3d at 548.

We overrule Bussey's eighth issue.

## III.   The Trial Court Did Not Abuse its Discretion by Overruling Relevance Objections

In his second issue, Bussey argues that the trial court erred by admitting irrelevant evidence when officers testified about how assaults typically occur, how suspects commonly flee the scene, and how abusive relationships can have good times in between the bad times.

### A.   Standard of Review and Applicable Law

"Questions of relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion."  *Ohlfs v. State*, No. 02-11-00376-CR, 2013 WL 1457756, at *7 (Tex. App.—Fort Worth Apr. 11, 2013, no pet.) (mem. op., not designated for publication) (quoting *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993)).

### B.   Analysis

Based on their training and experiences, and through observation of those experiences in responding to domestic assault calls, the officers could testify to how assaults typically occur, how suspects commonly flee the scene, and how abusive relationships can have good times in between the bad times.[6]  *See Zaff v. State*, No. 02-23-00320-CR, 2024 WL 3714996, at *5 (Tex.

---

[6]Bussey did not preserve his objection to testimony about the "dynamic[s] . . . [of] a domestic violence relationship." "An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection."  *Lane*, 151 S.W.3d at 193 (alteration in original) (quoting *Valle*, 109 S.W.3d at 509).  Here, Montoya testified as to how sexual assault comes into play in domestic violence relationships.  His testimony came in without objection.  Then, the State asked several questions about the general dynamics of a domestic violence relationship. Montoya stated that, "[i]t looks like as [he] said before."  Then, Bussey objected, and the trial court overruled the

App.—Fort Worth Aug. 8, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that the detective "could testify as a lay witness that delayed reporting, a lack of visible injuries, a private setting, and a lack of video evidence were all common in the family-violence cases he had seen"). The testimony is also relevant because it "help[s] the average juror understand the dynamics of the relationship between [Bussey] and [A.D.] . . . , why [A.D.] would stay in an abusive relationship." *James v. State*, 623 S.W.3d 533, 555 (Tex. App.—Fort Worth 2021, no pet.); *see also Swify v. State*, No. 02-24-00157-CR, 2025 WL 2264055, at *4 (Tex. App.—Fort Worth Aug. 7, 2025, no pet.) (mem. op., not designated for publication) ("But as this court has previously recognized, a police officer need not qualify as an expert to testify as to how family violence victims typically behave."). Therefore, the trial court did not abuse its discretion.

We overrule Bussey's second issue.

## IV. The Trial Court Did Not Abuse its Discretion by Overruling Speculation Objections

In his third and ninth issues, Bussey argues that statements elicited from witnesses were improper speculation.

### A. Standard of Review

"Whether an opinion meets the fundamental requirements of Rule 701 [of the Texas Rules of Evidence] is within the sound discretion of the trial court and its decision regarding

objection. The State later circled back to the general dynamics of a domestic violence relationship and asked Montoya several more questions, including, "[W]hat other aspects of an offense like sexual assault can have an effect on the power and control dynamics between a victim and a defendant in any case[.]" "Because the substance of [the] statements forming the basis of this appellate complaint was admitted elsewhere without objection, we overrule" that challenge to hearsay. *Steel v. State*, No. 06-25-00001-CR, 2025 WL 1936065, at *4 (Tex. App.—Texarkana July 15, 2025, no pet.) (mem. op., not designated for publication).

admissibility should be overturned only if it abuses its discretion." *Fairow v. State*, 943 S.W.2d 895, 901 (Tex. Crim. App. 1997). "The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

## B. Applicable Law

A lay witness may testify to matters within his or her personal knowledge and offer an opinion only if it is rationally based on the witness's perceptions and helpful to the determination of a fact in issue. TEX. R. EVID. 602, 701; *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). "Speculation is the mere theorizing or guessing about the possible meaning of the facts and evidence presented." *Gross v. State*, 380 S.W.3d 181, 188 (Tex. Crim. App. 2012). "[C]ourts allow police officers to proffer an opinion when it is based on their training or experience and their personal knowledge of the event in question." *Ex parte Nailor*, 105 S.W.3d 272, 277 (Tex. App.—Houston [14th Dist.] 2003), *aff'd*, 149 S.W.3d 125 (Tex. Crim. App. 2004).

## C. Guilt-Innocence Phase

In his third issue, Bussey argues that the trial court allowed officers to speculate on (1) "when strangulation becomes a tool that they use for power and control," (2) why victims change their stories, (3) whether victims know to lie about indicators of strangulation, including involuntary urination, and (4) how trauma response affects victim behavior.

Here, each officer who offered the challenged opinions possessed extensive specialized training and years of hands-on experience in domestic violence investigations. *See Cueva v.*

*State*, 339 S.W.3d 839, 880 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd) ("Police officers may generally offer lay-opinion testimony concerning matters about which they have personal knowledge and experience in their employment as a law enforcement officer and specifically concerning the meaning of certain behavior of criminal suspects they encounter."); *see also Swify*, 2025 WL 2264055, at *4 ("[A] police officer need not qualify as an expert to testify as to how family violence victims typically behave.").

Nilsen testified that she has attended relevant domestic violence conferences, studied strangulation and homicide related to asphyxiation, and taught courses on those topics. *See Ex parte Nailor*, 105 S.W.3d at 277–78 (Tex. App.—Houston [14th Dist.] 2003) ("Here, the record shows that the investigating officer had been a patrol officer for sixteen years and testified that approximately ten to twenty percent of the calls he receives are domestic assaults. Thus, the officer possesses adequate experience to opine whether appellant had been attacked."). Her testimony that strangulation is among the most lethal forms of intimate partner violence was not conjecture because it was an opinion directly grounded in her training and field experience. *See Sowell v. State*, No. 13-20-00250-CR, 2021 WL 3196520, at *3 (Tex. App.—Corpus Christi–Edinburg July 29, 2021, no pet.) (mem. op., not designated for publication) ("[The detective's] extensive history in dealing with strangulation cases allowed him to identify marks on [the victim's] neck, that she had vomited, and that she [had] urinated, as indicators that strangulation had occurred."). Smith had fourteen and one-half years on patrol responding to 9-1-1 calls and, also, as a patrolmen training officer. Therefore, the trial court did not abuse its discretion by overruling Bussey's speculation objections.

16

We overrule Bussey's third issue.

### D. Punishment Phase

In his ninth issue, Bussey argues that witnesses were allowed to speculate during the punishment phase on (1) what A.D.'s life was like before Bussey, (2) what the trial process has been like for A.D., (3) stating that Bussey does not make any contribution to society, and (4) whether the harm caused by Bussey still affects A.D.'s personality.

Even assuming, without deciding, that those rulings were erroneous, any such error was harmless. *See* TEX. R. APP. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). The jury heard extensive evidence of Bussey's violence toward A.D. and his prior criminal history introduced at punishment.

We overrule Bussey's ninth issue.

## V. No Preservation of Bad Acts Notice

In his fourth issue, Bussey argues that the State did not provide sufficient notice that Bussey interfered with A.D.'s cooperation with the investigation.

Bussey failed to preserve this issue because he did not request a continuance.[7] *See Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("To preserve error regarding the State's failure to provide reasonable notice of its intent to use

---

[7]Also, Bussey's trial objection did not invoke Article 37.07, § 3(g) of the Texas Code of Criminal Procedure, and Bussey's complaint at trial does not comport with the challenge on appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Supp.); *Clark*, 365 S.W.3d at 339 (quoting TEX. R. APP. P. 33.1(a)(1)). The notice requirement in Article 37.07, § 3(g) simply does not apply to evidence that is offered during the guilt/innocence phase. *Luna v. State*, 687 S.W.3d 79, 100–01 n.4 (Tex. App.—Eastland 2024, pet. ref'd) (holding Appellant inadequately briefed his challenge to the guilt/innocence evidence because he cited Article 37.07, § 3(g), a provision governing the admissibility of punishment evidence, which has no application to evidence offered during the guilt/innocence phase of trial).

extraneous offense evidence, the defendant must request a continuance to mitigate the effects of surprise."); *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise.").

Even so, the State gave proper notice of the extraneous act. At the bench conference, the State said, "It's in the offense report of the sexual assault that he called." Bussey replied, "We were noticed as to a sexual assault, but not as to . . . his interference with a witness in a sexual assault." The State's notice of extraneous offenses included:

> Any and all bad acts, wrongs, or crimes listed in any document, recording, or other discovery made available in this matter . . . in Tarrant County, TX, unless otherwise stated in the discovery, and on or about the date of the offense on trial.

Since Bussey acknowledged that he received the offense report at issue, we overrule his fourth issue.

## VI. Bussey's Fifth Amendment Right to Silence Was Not Violated

In his fifth issue, Bussey argues that the State violated his Fifth Amendment right to silence when Montoya testified that defendants sometimes do not want to speak with him "because there's an aspect of guilt there."

### A. Standard of Review and Applicable Law

Whether the admission of evidence violated a defendant's constitutional rights is reviewed de novo. *Salinas v. State*, 369 S.W.3d 176, 179 (Tex. Crim. App. 2012), *aff'd*, 570 U.S. 178 (2013).

The Fifth Amendment protects a person against compelled self-incrimination. U.S. CONST. amend. V; *Griffin v. California*, 380 U.S. 609, 615 (1965). Pre-arrest and pre-*Miranda*,[8] the use of that silence does not implicate the Fifth Amendment. *Buentello v. State*, 512 S.W.3d 508, 521 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

**B.      Analysis**

Montoya testified that he called A.D. to investigate the sexual assault. While speaking with A.D., Bussey started talking to Montoya. Montoya was asking Bussey to come in for an interview. Bussey stated that the matter "was not that big of a deal and hung up" the phone. Then, the State asked Montoya about defendants in general and whether defendants sometimes do not want to speak with him "because there's an aspect of guilt there." Bussey objected and stated that that was a comment on Bussey's "right to remain silent, that he declined to give a statement, and [Montoya was] telling the jury that [Bussey] declined to give a statement because he is guilty."

The Fifth Amendment argument fails on several grounds.[9] The complained-of remark does not implicate the right to remain silent. The remark at issue was a generalized statement about how some suspects behave and not a reference to Bussey's silence in particular.

The record does not establish that Bussey was under arrest or had received *Miranda* warnings at the time of the exchange. "The plain language of the Fifth Amendment protects a defendant from *compelled* self-incrimination." *Salinas*, 369 S.W.3d at 179 (citing U.S. CONST.

---

[8]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

[9]Bussey did not object at trial or on appeal based on the Texas Constitution. We limit our analysis to federal constitutional grounds.

19

amend. V). However, "[i]n pre-arrest, pre-*Miranda* circumstances, a suspect's interaction with police officers is not compelled." *Id.* The Fifth Amendment's protection against the use of silence as substantive evidence of guilt is triggered in the post-arrest, post-*Miranda* custodial context. *Buentello*, 512 S.W.3d at 521. Even if the remark could be construed as referencing Bussey specifically, the record reflects that Montoya contacted A.D. regarding the prior sexual assault, and Bussey voluntarily got on the phone and voluntarily told Montoya that the case was not a big deal. A voluntary statement to law enforcement does not constitute the exercise of one's right to remain silent. *Salinas*, 369 S.W.3d at 179.

We overrule Bussey's fifth issue.

## VII. The 9-1-1 Call Was Non-Testimonial

In his sixth issue, Bussey argues that the trial court erred by admitting A.D.'s 9-1-1 recording because the statements were testimonial.

### A. Standard of Review

Whether a statement is testimonial or non-testimonial is a question of law reviewed de novo, and we defer to the trial court's resolution of historical facts and credibility determinations. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

### B. Applicable Law

The Sixth Amendment's Confrontation Clause bars the admission of testimonial out-of-court statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine. U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

20

"Statements on 9-1-1 calls that relate to ongoing emergencies, and do not establish historical facts, are non-testimonial and do not implicate the Sixth Amendment." *Rathode v. State*, No. 05-22-01346-CR, 2024 WL 3408266, at *5 (Tex. App.—Dallas July 15, 2024, pet. ref'd) (mem. op., not designated for publication) (citing *Davis v. Washington*, 547 U.S. 813, 827–28 (2006) ("statements made by complainant to 9-1-1 dispatcher identifying [defendant] as her assailant were non-testimonial because their 'primary purpose was to enable police assistance to meet an ongoing emergency.'")).

### C. Analysis

A.D. placed the 9-1-1 call in the early morning hours while Bussey was at large in the immediate vicinity. A.D. stated that she was afraid to go outside because she did not know where Bussey was and feared he might be hiding nearby. A.D.'s 9-1-1 recording was non-testimonial because its primary purpose was to obtain emergency assistance while Bussey remained at large in the area. Therefore, the trial court did not err in admitting the 9-1-1 recording.

We overrule Bussey's sixth issue.

## VIII. No Error in Denial of Directed Verdict

In his seventh issue, Bussey argues that the trial court erred in denying Bussey's directed verdict because the State failed to prove intent and causation.

### A. Standard of Review

"A motion for instructed verdict is essentially a trial level challenge to the sufficiency of the evidence." *Smith v. State*, 499 S.W.3d 1, 6 (Tex. Crim. App. 2016) (citing *Williams v. State*,

937 S.W.2d 479, 482 (Tex. Crim. App. 1996)). "We assess legal sufficiency by viewing the evidence in the light most favorable to the verdict and asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bittick v. State*, 707 S.W.3d 366, 368 (Tex. Crim. App. 2024) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses, and juries may draw multiple reasonable inferences from the facts so long as each is supported by the evidence presented at trial." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319).

### B. Applicable Law

A person commits assault of a family or household member with a previous conviction by intentionally or knowingly causing bodily injury to a person with whom the defendant is in a dating relationship, with a prior conviction. TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (Supp.). Intent may be inferred from "acts, words, and the conduct of the" defendant, as well as the nature of the injuries. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

### C. Analysis

"The manner and means of the bodily injury alleged is not an essential element of the offense and therefore is not included within the hypothetically correct jury charge." *Thomas v.*

22

*State*, 303 S.W.3d 331, 333 (Tex. App.—El Paso 2009, no pet.).[10]  Therefore, in a hypothetically correct jury charge, the State must only prove that the defendant intentionally or knowingly caused bodily injury.  *Hernandez v. State*, 556 S.W.3d 308, 312–14 (Tex. Crim. App. 2017).

Bussey was identified as A.D.'s ex-boyfriend.  Smith identified Bussey as the suspect and believed that he had probable cause to arrest Bussey that night.  Bussey's prior conviction for attempted sexual assault involving A.D. was admitted into evidence.  Bussey fled after A.D. threatened to call the police.

A.D. stated on the 9-1-1 recording, after the operator asked if anyone was injured that "[she] ha[d] some marks on [her] chin.  [She] want[ed] to make the report on just that he, so that [Bussey] does not come back around here."  Wyrick testified that the injuries "appeared, based on [his] experience, fresh."  *See Smith v. State*, No. 09-23-00326-CR, 2025 WL 1819258, at *2 (Tex. App.—Beaumont July 2, 2025, no pet.) (mem. op., not designated for publication) ("Other courts have concluded the State proved bodily injury where a victim complained of pain, had 'fresh scratch marks[,]' or had bruising." (alteration in original)).  Smith confirmed that A.D. had a "small abrasion underneath the left side of her lip."  Smith confirmed during his testimony that A.D. was hit.  The jury was able to view photographs of A.D.'s injuries.  Intent could be inferred from the context:  Bussey struck A.D. after she threatened to call the police, broke her cell phone, and fled before officers arrived.  *See Guevara*, 152 S.W.3d at 50.  Based on a

---

[10]The State did allege a specific manner and means in its indictment.  *See Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001).  The State alleged in its indictment that Bussey "did intentionally or knowingly cause bodily injury to [A.D.], a member of the defendant's family or household or with whom the defendant had a dating relationship, by striking her with the defendant's hand or by tackling her with the defendant's body." (Capitalization normalized).

hypothetically correct jury charge, the evidence, viewed in the light most favorable to the verdict, was sufficient.[11]

We overrule Bussey's seventh issue.

## IX.     There Is No Cumulative Error

In his tenth issue, Bussey argues that the cumulative effect of all the trial court's errors caused him sufficient harm to justify the reversal of the trial court's judgment and remand for a new trial.  To make a finding of cumulative harm from multiple errors, we must find that the trial court erred.  *See Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016) (finding "no cumulative harm" because the "appellant . . . failed to prove error concerning each of [his] claims separately"); *Uptergrove v. State*, 881 S.W.2d 529, 531 (Tex. App.—Texarkana 1994, pet. ref'd) ("claim of cumulative error must fail" if no error found).  Because Bussey does not demonstrate any errors, his claim of cumulative harm from these alleged errors must also fail.  To the extent that we assumed error above, we also found that the point had been established by properly admitted evidence.

We overrule Bussey's tenth issue.

---

[11]"The State is not required to produce the complainant to testify in order to sustain its burden of proving an assault charge."  18 TEX. JUR. 3D CRIMINAL LAW:  *Offenses Against the Person* § 316 (2026).

24

## X.      Conclusion

We affirm the trial court's judgment.


                                                Jeff Rambin
                                                Justice

Date Submitted:     May 8, 2026
Date Decided:       May 27, 2026

Do Not Publish